## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARIA STOVER,                )
                             )
                Plaintiff,   )          Case No.:
                             )
vs.                          )
                             )
UNITED STATES DEPARTMENT     )
OF THE ARMY,                 )
                             )
                Defendant.   )
_____)

### COMPLAINT FOR DAMAGES UNDER THE PRIVACY ACT OF 1974 AND

### FOR DECLARATORY JUDGMENT

The Plaintiff Maria Stover brings this action for damages and a declaratory judgment pursuant to the Privacy Act of 1974, 5 U.S.C. Section 552a, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and states:

### GENERAL ALLEGATIONS

### Parties, Jurisdiction and Venue

1.      This is an action by Plaintiff Maria Stover (hereinafter "Mrs. Stover") against the Defendant United States Department of the Army (hereinafter "Army"), pursuant to the Privacy Act of 1974, 5 U.S.C. Section 552a or the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, as specifically stated in each Count.

2.      Plaintiff Mrs. Stover is a citizen of the United States and currently resides in Spring Lake, Cumberland County, North Carolina.   Mrs. Stover is a disabled veteran of the U.S.

Army and the dependent wife of an active duty U.S. Army officer.

3.      Defendant Army is an agency of the United States Government within the meaning of 5 U.S.C. Section 552a(a)(1), and is in possession and control of records pertaining to Plaintiff Mrs. Stover.  Defendant Army owns and operates William Beaumont Army Medical Center (hereinafter "WBAMC"), in El Paso, El Paso County, Texas.

4.      The United States District Court has original jurisdiction over this action pursuant to 5 U.S.C. Sections 552a(g)(1) and 552a(a)(4)(B);  and 28 U.S.C. Section 1331.  Additionally, this is an action against the United States or its subordinate agency pursuant to one or more federal statutes.

5.      Venue is proper in the District Court for the District of Columbia as specifically stated in 5 U.S.C. Section 552a(g)(5).


**Conditions Precedent to Suit**

6.      All conditions precedent to the bringing of this action have occurred, been satisfied or been waived.


**Facts Applicable to All Counts**

7.      At all times relevant to this matter, Mrs. Stover was the dependent wife of Major Jerry Stover (hereinafter "Major Stover"), an active duty U.S. Army officer and a member of the U.S. Army Nurse Corps.

8.      Major Stover was stationed at WBAMC, a U.S. Army medical treatment facility (hereinafter "MTF"), located in El Paso, Texas.

9.      Major Stover was accompanied by his wife and children while he was stationed in El Paso, Texas. The Defendant Army provided healthcare for Major Stover's dependents, Mrs. Stover and her children, through its healthcare system, which was located at WBAMC or elsewhere in the area.

10.      From approximately December 2005 through September 2009, Mrs. Stover did receive medical treatment and health care services from U.S. Army physicians, nurses and health care personnel located at WBAMC and elsewhere in the local El Paso area.

11.      From 2005 through the present, Mrs. Stover's U.S. Army health records and the health records of her children, have been and are kept at Defendant Army's medical facilities and maintained by it.

12.      At all relevant times hereto, Audra Sowell (hereinafter "Ms. Sowell") was a licensed vocational nurse who was a civilian employee of WBAMC.

13.      While Major Stover was stationed at WBAMC, Ms. Sowell developed an infatuation with Major Stover and began stalking him. When her romantic overtures were rebuffed by Major Stover, Ms. Sowell began stalking and harassing Mrs. Stover, Major Stover and their children.

14.      Ms. Sowell, without any authority or legal justification, illegally accessed and used the private, confidential health records of Mrs. Stover and her children to obtain private home telephone numbers and cell phone numbers, obtain e-mail addresses, obtain home addresses, and obtain confidential medical information on them to use in harassing and stalking them.

15.      In or around August 2009, Major Stover and his family received change of duty

orders and relocated to Greenville, North Carolina, for a special assignment. The family has moved several times within the state since that time.

16.     Upon information and belief, Ms. Sowell sent e-mails to staff members at WBAMC discussing Mrs. Stover's private health information in the summer of 2012 to ridicule and embarrass Mrs. Stover.

17.     In or around June 2012, Ms. Sowell contacted Mrs. Stover via text message approximately 180 times to Mrs. Stover's personal unlisted cell phone using a private number. Mrs. Stover had never shared her unlisted phone number with Ms. Sowell.

18.     Mrs. Stover changed her personal cell phone number to avoid any unwanted contact from Ms. Sowell.

19.     Upon receiving continued unsolicited contacts from Ms. Sowell, Mrs. Stover wrote to WBAMC and requested a log containing the names of all persons who accessed her medical records at WBAMC. The document requested is also known as the "Enterprise Accesses to a Specific Patient Record" (hereinafter "EASPR").

20.     Mrs. Stover received the EASPR report from WBAMC on or about August 24, 2012, which revealed unauthorized accesses by a WBAMC employee, Ms. Sowell, to Mrs. Stover's confidential health records, in excess of 100 times during the period between June 1, 2012 through August 24, 2012.   Exhibit "1."

21.     Ms. Sowell accessed Mrs. Stover's records without authorization and without a legitimate medical reason to do so. This information was accessed by Ms. Sowell long after Mrs. Stover and her family had left El Paso, Texas.

22.     The EASPR report received by Mrs. Stover from WBAMC showed that the

majority of accesses by Ms. Sowell were into Mrs. Stover and her children's personal demographic information contained in their health records.   Exhibit "1."

23.     Ms. Sowell then used this information, including Mrs. Stover's personal cell phone number, to contact Mrs. Stover, who lived in another state.   In the course of these contacts, Ms. Sowell informed Mrs. Stover that she knew her home address, unlisted home phone number, and personal health information.

24.     Jack William Bell (hereinafter "Mr. Bell"), the HIPAA Privacy and Security Officer at WBAMC, sent e-mail correspondence to Mrs. Stover dated October 24, 2012.   He advised Mrs. Stover that Ms. Sowell's computer access had been completely severed, and that he was awaiting return of Ms. Sowell's final statement regarding her unauthorized accesses to Mrs. Stover's records.   Exhibit "2."

25.     Mr. Bell also indicated that three additional WBAMC personnel had accessed Mrs. Stover's personal health records, and that they would be interviewed.   Mr. Bell indicated that sanctioning in the matter would be severe and would include termination.   Exhibit "2."

26.     Upon information and belief, Ms. Sowell was only barred from access to Mrs. Stover's medical records for thirty (30) days and given additional Health Insurance Portability and Accountability Act (hereinafter "HIPAA"), training for her excessive, unauthorized accesses to Mrs. Stover's personal health information.

27.     In or around October 2012, Ms. Sowell again made repeated, unsolicited contacts with Mrs. Stover via e-mail, asking that they speak regarding Ms. Sowell's encounter with Major Stover.   Ms. Sowell also begged Mrs. Stover to "stop" referring to Mrs. Stover's breach of privacy complaint.   Mrs. Stover did not provide Ms. Sowell with her personal e-mail address,

which was used by Ms. Sowell for this communication.

28.     On October 2, 2012, Mrs. Stover, a Tricare beneficiary, filed a violation of privacy rights complaint with the Tricare Management Activity Privacy and Civil Liberties Office of the Office of the Assistant Secretary of Defense, Health Affairs   ("ASD Tricare Privacy Office" herein).   Exhibits "3" and "6."

29.     On October 16, 2012, Mrs. Stover contacted Mr. Bell via e-mail, requesting an update on the investigation concerning unauthorized accesses to her health records.   Mrs. Stover also requested that security limitations be placed on her personal records to prevent further unauthorized accesses until the conclusion of the investigation, as Ms. Sowell had, on numerous occasions, made unsolicited contacts with her despite her changing her contact information.

30.     On or around October 24, 2012, Mr. Bell responded to Mrs. Stover's repeated inquiries concerning Ms. Sowell's unauthorized accesses to Mrs. Stover's private medical records, stating that the investigation was "time consuming" and that "we do not have the capability of locking down your electronic record."   Exhibit "2."

31.     Mr. Bell formally responded to Mrs. Stover's complaint in a letter dated November 30, 2012.   Mr. Bell confirmed that Ms. Sowell had unlawfully accessed Mrs. Stover and all of her family members' records "innumerable" times.   Exhibit "4."

32.     In an interview with government officials investigating Mrs. Stover's complaints, Ms. Sowell falsely stated that Mrs. Stover had verbally authorized Ms. Sowell to view Mrs. Stover's personal health records.

33.     On or around December 5, 2012, Mrs. Stover was again contacted by Ms. Sowell. Mrs. Stover contacted Mr. Bell following the incident to obtain an update on the breach of

privacy investigation and to request that Ms. Sowell be disciplined in hopes that it would deter Ms. Sowell from contacting her and harassing her.   Mrs. Stover requested Mr. Bell to contact her immediately regarding the matter.   Exhibit "5."

34.     On December 19, 2012, the ASD Tricare Privacy Office confirmed in a letter to Mrs. Stover that her allegation of HIPAA violations was substantiated based on an audit performed on her records.   However, the ASD Tricare Privacy Office relied completely on the Army's representations of the investigation and did not investigate the matter further, despite Mrs. Stover's insistence that there were continued privacy violations.   Exhibit "6."

35.     Ms. Sowell attempted to contact Mrs. Stover's minor children through social media outlets, including Facebook, in late December 2012.

36.     Alarmed by these actions, Mrs. Stover again contacted Mr. Bell and Colonel Michael Amaral (another Army officer) on December 26, 2012, to obtain additional privacy/access audits for her children's medical records.   She also filed privacy complaint forms for herself and two of her children.   Exhibits "7," "8," and "9."

37.     Mrs. Stover made similar requests on January 4, 8, 9, and 11 of 2013.   Mrs. Stover not only made the request to Mr. Bell and the Chief of Staff of WBAMC, Colonel Michael Amaral, but she made the request to a number of other Army officials including Sonya M. Taylor, David Guenther, and Mark Sposato.   See, e.g., Exhibits "10" and "11."

38.     On December 3, 2012, and January 22, 2013, Colonel Michael S. Heimdall, Medical Service Corps, U.S.Army, the Commander of WBAMC, sent a letter to U.S. Senator Kay R. Hagan of North Carolina, in response to Senator Hagan's inquiry into Mrs. Stover's breach of privacy complaint.   The letter confirmed unauthorized accesses to Mrs. Stover's

private medical records by Ms. Sowell.   Exhibits "12" and "13."

39.     The letter also stated that Defendant Army previously provided a complete audit report to Mrs. Stover and that no additional audit reports were necessary, despite the fact that Mrs. Stover had made numerous requests for additional EASPR reports for other time periods, which had been denied.

40.     The letter also indicated that the employee responsible for the breaches, Ms. Sowell, had been disciplined.   Mrs. Stover was not informed as to how Ms. Sowell was disciplined nor as to any restrictions placed on Ms. Sowell to prevent further privacy violations.

41.     On or about February 21, 2013, Mrs. Stover received a letter from Office for Civil Rights ("OCR") of the U.S. Department of Health and Human Services ("HHS").   The HHS OCR stated that it had contacted the Office of the Surgeon General of the Army and WBAMC. The letter also stated that ASD Tricare Privacy Office confirmed that unauthorized accesses to Mrs. Stover and her minor children's records had occurred.   "Exhibit 14."

**Complaints Regarding Violations of Privacy Made By Mrs. Stover**

42.     Mrs. Stover made a number of complaints to WBAMC and the government concerning the invasion of her personal privacy and the breach of the confidentiality of her medical records by Ms. Sowell.   Mrs. Stover made numerous requests for EASPR reports tracking unauthorized accesses to her files and her children's files at different points in time, which were denied.

43.     Between December 2012 and January 2013, Mrs. Stover made numerous requests to Mr. Bell for an EASPR report for September 2009 through May 2010, the time-frame

immediately before she was first contacted by Ms. Sowell.   Mr. Bell never provided her with the EASPR report nor advised her of its outcome.

44.     Mrs. Stover made similar requests to various other Army officials, to no avail.

45.     In many instances, Mrs. Stover received confirmation e-mails stating that her requests had been received and read, but with no response from Mr. Bell or any other Army officials.

46.     When Mrs. Stover made further inquiries to compliance officials concerning her numerous requests for additional EASPR reports from WBAMC, she was told that Mr. Bell would not process any more of her requests and that one was enough.

### Applicable Laws and Regulations Regarding Mrs. Stover's Privacy Rights

47.     The Privacy Act of 1974, 5 U.S.C. Section 552a (the "Privacy Act"), provides a civil cause of action against a federal agency for failing to comply with any provision of the Privacy Act, or any rule promulgated thereunder, in such a way as to have an "adverse effect" on an individual.   5 U.S.C. Section 552a(g)(1)(D).

48.     As an MTF, WBAMC is governed by U.S. Army Regulation 40-400.   Section 2-20 of Army Regulation 40-400 requires all MTF "commanders [to] ensure that all patient protected health information is handled according to Public Law 104-191."   Public Law 104-191 is HIPAA.   Mrs. Stover's personal medical information and her private information were kept in a "system of records" as that term is defined by and used within the Privacy Act.

49.     Department of Defense Regulation 6025.18-R (June 2003), "DOD Health Information Privacy Regulation," applies to identifiable health information such as Mrs. Stover's

and regulates how such information should be used and disclosed.

50.     Department of Defense Regulation 5400.11-R (May 2007), "DOD Privacy Program," applies to any activity associated with maintaining "a system of records, including the collection, use and dissemination of records on behalf of the contracting DOD component."   All of these regulations, discussed in paragraphs 48-50, constitute lawful general orders and enforceable regulations.

### Retaliation by the Army Against Mrs. Stover for Filing Her Privacy Complaints

51.     On or about January 7, 2013, Ms. Sowell filed a request for a Protective Order against Plaintiff's husband, Major Stover.   Exhibits "15" and "16."

52.     Ms. Sowell filed a false complaint against Major Stover in an attempt to deflect blame from herself and retaliate against Mrs. Stover and her family for Mrs. Stover's filing of the privacy complaints which named her.   At the time of filing this Protective Order, Mrs. Stover and her family, including Major Stover, had moved to North Carolina and had been living there for several years.   Ms. Sowell's complaint and application for a protective order against Major Stover were completely without merit and were filed with malice.

53.     The U.S. Army assisted Ms. Sowell in retaliating against Mrs. Stover and her family by providing her with legal representation through the JAG Corps' (hereinafter "JAGC") Legal Assistance Program.   Ms. Sowell was represented by Bettie K. Ball, Army Legal Assistance Counsel, in the WBAMC Judge Advocate General's (JAG) Office, in this matter. Exhibit "15."

54.     Section 2-5(6), Army Regulation 27-3 (1996), allows for JAG legal assistance to

civilian employees only in limited circumstances, such as when a civilian employee is providing services outside the U.S., is in a "mission-essential" area, or is getting ready to be deployed.

55.     Ms. Sowell, a non-deploying, non-dependent, civilian employee of a Continental United States-based healthcare facility (WBAMC), was not entitled to representation by U.S. Army JAG Office personnel.   However, Ms. Sowell was able to obtain a free U.S. Army JAG attorney through the Legal Assistance Program using her connections at WBAMC, to represent her in this matter, even though it is not authorized by a lawful general regulation.

56.     The representation of a non-dependent civilian employee by a free Army Legal Assistance counsel assigned to WBAMC and under the cognizance of the U.S. Army JAG, is completely unauthorized by any Department of Defense or U.S. Army Regulation and is contrary to U.S. law.

57.     Section 2-5(6), Army Regulation 27-3 (1996), specifically entitles officers in Major Stover's position to free legal representation through the JAG Legal Assistance Program. However, Major Stover, an active duty Army officer, was denied U.S. Army JAG representation in this matter, allegedly due to a conflict of interest caused by Ms. Sowell's illegal representation by an Army JAG Office attorney.   This is directly contrary to DOD and Army Regulations, which state, in effect, that active duty Army officers should have preference over civilian employees, Section 2-6(b)(2), Army Regulation 27-3 (1996).   This is further evidence of Defendant Army's retaliation against Mrs. Stover secondary to her filing a privacy complaint against it.

58.     Upon information and belief, the JAGC failed to follow its own regulations, to wit:   Section 2-6(b)(3), Army Regulation 27-3 (1996), by refusing to provide Major Stover legal

representation and providing Ms. Sowell with unauthorized free legal representation.

59.     Additionally, Major Stover's promotion to Lieutenant Colonel was delayed due to the Protective Order and complaint filed by Ms. Sowell.   This caused stress and undue hardship on Mrs. Stover and her family.

60.     The Army's failure to provide Major Stover legal assistance even though he was entitled to it; allowing Ms. Sowell to obtain a Protective Order against Major Stover even though he had moved to North Carolina two (2) years prior and Defendant Army's delay in promoting Major Stover as a result of the Protective Order were all unfavorable personnel actions, which served as a reprisal against Major Stover in response to Mrs. Stover's submission of her privacy violation complaint.

61.     Defendant Army's retaliatory actions in response to Mrs. Stover's filing her privacy complaint was intimidation, harassment, and discrimination, specifically prohibited under the Privacy Act, under Section C-14.7 of DOD 6025.18-R, and under HIPAA.

### Attorney's Fees and Costs

62.     Mrs. Stover has been required to hire an attorney to represent her in this matter.

63.     Mrs. Stover has retained the undersigned attorney and law firm to represent her.

64.     Mrs. Stover has incurred attorneys' fees and costs associated with this matter as a result.

65.     Pursuant to 5 U.S.C. Sections 552a(g)(1)(D) and 552a(g)(4), Mrs. Stover is entitled to actual damages or the statutory minimum damages of no less than $1,000.00 plus reasonable attorney's fees and costs associated with this matter.

66.     Such an award is not discretionary.   <u>See</u> OMB Guidelines, 40 Fed. Reg. 28, 948, 28, 970 (July 9, 1975).

<u>**COUNT I**</u>

<u>**VIOLATION OF THE PRIVACY ACT**</u>

67.     This is a cause of action by Mrs. Stover against Defendant Army for damages pursuant to the Privacy Act of 1974, specifically, 5 U.S.C. Sections 552a(g)(1)(B), 552a(g)(1)(D), and 552a(d)(1).

68.     This Count is pleaded in the alternative to and in addition to any other count or cause of action pleaded herein.

69.     Plaintiff incorporates for this Count the allegations contained in paragraphs 1 through 66 above, as if fully set forth herein.

70.     Defendant Army maintains confidential health records and records containing personal information related to Mrs. Stover within one or more systems of records protected under the Privacy Act of 1974.

71.     Defendant Army, through the actions of Ms. Sowell, accessed Mrs. Stover's private health records and other records, without valid authorization, for the purpose of contacting and harassing Mrs. Stover and her family.

72.     Defendant Army, through the actions of Ms. Sowell, acted intentionally or willfully in violation of Mrs. Stover's privacy rights.

73.     Defendant Army, its employees and officers, including Mr. Bell, the Commander, of WBAMC, and the Chief of Staff of WBAMC, knew or should have known that Ms. Sowell's

actions were improper, unlawful and in violation of the Privacy Act.

74.     Defendant Army violated 5 U.S.C. Section 552a(e)(10) by intentionally and willfully failing to establish appropriate administrative, technical and physical safeguards to insure the security and confidentiality of Mrs. Stover's confidential records and to protect against any anticipated threats or hazards to its security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to Mrs. Stover.

75.     As a direct and proximate cause of each of the intentional and willful violations of the Privacy Act of 1974 by Defendant Army, Mrs. Stover has suffered an "adverse effect," as defined in 5 U.S.C. Section 552a(g)(1)(D), including but not limited to direct and indirect injury to her reputation, embarrassment, humiliation, anxiety, physical upset, emotional upset, mental anguish, physical pain and suffering, and out-of-pocket pecuniary losses as well as inconvenience and unfairness and fear of further violations by Defendant Army of her privacy rights.

76.     The violation by Defendant Army of Mrs. Stover's privacy rights was acknowledged by Defendant Army through various communications, as evidenced on August 24, 2012; November 30, 2012; December 3, 2012; December 19, 2012; and January 22, 2013. Exhibits "1," "4," "6," "12," "13" and "14."  The violation of Mrs. Stover's rights under the Privacy Act by Ms. Sowell began in or around 2008 and continued through at least January 2013. As a result of Defendant Army's failure, Ms. Sowell was able to access Mrs. Stover's confidential medical records and personal information more than 100 times without any valid authorization and obtain Mrs. Stover's personal contact information.  Ms. Stover first discovered this on or about August 24, 2012.

77.     As a direct and proximate cause of each of the intentional and willful violations of

the Privacy Act by Defendant Army, Mrs. Stover has suffered damages, including but not limited to, actual pecuniary damages and actual non-pecuniary damages in the form of direct and indirect injury to her reputation, embarrassment, humiliation, anxiety, physical upset, emotional upset, mental anguish, and physical pain and suffering.   Her damages are ongoing and continuing.

## Entitlement to Attorney's Fees, Costs and Minimum Damages Pursuant to the Privacy Act

78.     Mrs. Stover has been required to hire an attorney to represent her in this matter.

79.     Mrs. Stover has retained the undersigned attorney and law firm to represent her.

80.     Mrs. Stover has incurred attorneys' fees and costs associated with this matter as a result.

81.     Pursuant to 5 U.S.C. Sections 552a(g)(1)(D) and 552a(g)(4), Mrs. Stover is entitled to actual damages or the statutory minimum damages of no less than $1,000.00, per breach, plus her reasonable attorney's fees and costs associated with this matter.

82.     Such an award is not discretionary.   See OMB Guidelines, 40 Fed. Reg. 28, 948, 28, 970 (July 9, 1975).

**WHEREFORE**, Plaintiff, Maria Stover, requests judgment in her favor and against Defendant, awarding her:

A.     Her actual damages pursuant to 5 U.S.C. Section 552a(g)(4)(A);

B.     Special damages as alleged in paragraphs 59, 60, 75 and 77 above;

C.     Minimum damages of not less than $1,000.00 per incident, pursuant to 5 U.S.C. Section 552a(g)(4)(A);

D.     Pre-judgment interest on all liquidated amounts;

E.     Mrs. Stover's reasonable attorney's fees and costs of this action as provided

-15-

in 5 U.S.C. Section 552(g)(4)(B);

F.      Post-judgment interest;

G.      Referral of the Army officials and employees responsible for violating the Privacy Act as set forth in this Complaint for criminal prosecution pursuant to 5 U.S.C. Section 552a(i)(3); and

H.      Such other relief as this Court deems just and proper.


## COUNT II

## ILLEGAL RETALIATION IN VIOLATION OF THE PRIVACY ACT

83.      This is a cause of action by Plaintiff Mrs. Stover against Defendant Army for damages for wrongful and illegal retaliation, harassment and intimidation, in violation of the Privacy Act of 1974.

84.      This Count is pleaded in the alternative to and in addition to any other count or cause of action pleaded herein.

85.      Plaintiff incorporates for this Count the allegations contained in paragraphs 1 through 66 and 70 through 77 above, as if fully set forth herein.

86.      Defendant Army failed to provide adequate measures to prevent unauthorized accesses of patients' confidential medical records by its employees.

87.      As a result of Defendant Army's failure, Ms. Sowell was able to access Mrs. Stover's confidential medical records over 100 times without any valid authorization and obtain Mrs. Stover's personal contact information.   Ms. Sowell used this information, in part, to contact Mrs. Stover and her family for the purpose of harassing and intimidating her.

-16-

88.     When Mrs. Stover filed complaints with WBAMC and the Army about the unauthorized accesses, Ms. Sowell was informed of her complaints and harassed and retaliated against Mrs. Stover and her family as a direct result.

89.     Defendant Army allowed Ms. Sowell to have continued access to Mrs. Stover's confidential medical records, even after Mrs. Stover notified Mr. Bell of the harassment.

90.     Section 2-20 of Army Regulation 40-400, requires all MTFs to adhere to the requirements of HIPAA.

91.     Defendant Army admitted to the violation of Section 2-20 of Army Regulation 40-400 when it admitted to the violation of HIPAA.   Exhibits "4," "6," and "12."

92.     Defendant Army also violated Section 2-20 of Army Regulation 40-400 when it retaliated against Mrs. Stover.   HIPAA prohibits a covered entity from threatening, intimidating, coercing, harassing, discriminating against or taking any other retaliatory action against any individual who files a HIPAA Privacy Violation Complaint.   42 C.F.R. Section 160.316.

93.     Mrs. Stover exercised her right as provided by law and filed a complaint with Defendant Army concerning WBAMC's HIPAA violation.

94.     DOD 6025.18-R Section C-14.7 prohibits a covered entity from intimidating, threatening, coercing, or discriminating against or taking other retaliatory action against an individual for exercising any of her rights under the regulation.

95.     Defendant Army retaliated against Mrs. Stover by providing Ms. Sowell with unauthorized legal representation, thereby, enabling Ms. Sowell to file a false complaint against Major Stover, damaging his reputation, career prospects, and overall ability to provide for his family.

96.     Defendant Army also retaliated against Mrs. Stover, including but not limited to the following:   by refusing to provide Major Stover with legal assistance even though he was entitled to such assistance;   by continuing to allow Ms. Sowell access to Mrs. Stover's records;   by preventing and delaying Major Stover's promotion to Lieutenant Colonel;   by entering a completely unwarranted Military Protective Order against Major Stover; and by refusing to provide Mrs. Stover with reports of the access of her children's medical records by Ms. Sowell when requested.   Each of their actions had an adverse effect on Mrs. Stover.

97.     The retaliation by Defendant Army against Mrs. Stover and her family is prohibited by law.

98.     The Privacy Act provides a civil cause of action "against an agency for failing to comply with any other provision, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual. [Emphasis added]."   5 U.S.C. Sect. 552a(g)(1)(D).

**WHEREFORE**, Plaintiff, Maria Stover, requests judgment in her favor and against Defendant, awarding her:

A.     Her actual damages pursuant to 5 U.S.C. Section 552a(g)(4)(A);

B.     Special damages as alleged in paragraphs 59, 60, 75 and 77 above;

C.     Minimum damages of not less than $1,000.00 per incident, pursuant to 5 U.S.C. Section 552a(g)(4)(A);

D.     Pre-judgment interest on all liquidated amounts;

E.     Mrs. Stover's reasonable attorney's fees and costs of this action as provided in 5 U.S.C. Sections 552a(g)(3)(B), 552a(g)(4)(B) and 552(a)(4)(E) and 28 U.S.C. Section 2412(d);

F.      Post-judgment interest;

G.      Referral of the Army officials and employees responsible for violating the Privacy Act as set forth in this Complaint for criminal prosecution pursuant to 5 U.S.C. Section 552a(i)(3); and

H.      Such other relief as this Court deems just and proper.

## COUNT III

## ACTION FOR DECLARATORY JUDGMENT PURSUANT TO THE FEDERAL DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201

99.     This is a cause of action by Plaintiff Mrs. Stover against Defendant Army for a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

100.    This Count is pleaded in the alternative to and in addition to any other count or causes of action pleaded herein.

101.    Plaintiff incorporates for this Count the allegations contained in paragraphs 1 through 66, 70 through 77, and 86 through 98 above, as if fully set forth herein.

102.    Plaintiff contends:

a.      There is an actual controversy between the two parties to this action.

b.      A bona fide, actual, present practical need for a declaratory judgment exists.

c.      The declaration requested concerns a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

d.      A privilege or right of the Plaintiff is dependent upon the facts or the law

applicable to the facts of this case.

   e. Plaintiff and the Defendant have an actual, present, adverse and antagonistic interest in the subject matter, either in law or in fact.

   **WHEREFORE**, Plaintiff, Maria Stover, requests a decision in her favor and against Defendant, that:

   A. Declares that the Army, through its actions, violated the privacy rights of Mrs. Stover under the Privacy Act pursuant to 28 U.S.C. Section 2201;

   B. Awards Mrs. Stover her reasonable attorney's fees and costs of this action as provided in 5 U.S.C. Sections 552a(g)(3)(B), 552a(g)(4)(B) and 552(a)(4)(E) and 28 U.S.C. Section 2412(d);   and

   C. Grants such other relief as the Court may deem just and proper.

## PRAYER FOR RELIEF

103. Mrs. Stover requests the Court enter judgment in her favor and against the Defendant awarding her:

   A. Her actual damages pursuant to 5 U.S.C. Section 552a(g)(4)(A);

   B. Special damages as alleged in paragraphs 59, 60, 75 and 77 above;

   C. Minimum damages of not less than $1,000.00 per incident, pursuant to 5 U.S.C. Section 552a(g)(4)(A);

D.   Pre-judgment interest on all liquidated amounts;

E.   A declaratory judgment declaring that the Army through its actions has violated the privacy rights of Mrs. Stover under the Privacy Act pursuant to 28 U.S.C. Section 2201;

F.   Referral of the Army officials and employees responsible for violating the Privacy Act as set forth in this Complaint for criminal prosecution pursuant to 5 U.S.C. Section 552a(i)(3); and

G.   Mrs. Stover's reasonable attorney's fees and costs of this action as provided in 5 U.S.C. Sections 552a(g)(3)(B), 552a(g)(4)(B) and 552a(4)(E) and 28 U.S.C. Section 2412(d);

H.   Post-judgment interest; and

J.   Grant such other relief as the Court may deem just and proper.

DONE this 21st day of August 2014.

/s/ _____
Timothy R. Clinton (D.C. Bar no. 497901)
**CLINTON BROOK & PEED**
1455 Pennsylvania Ave. N.W., Suite 400
Washington, DC 20004
(202) 618-1628 (tel)
(202) 204-6320 (fax)

/s/   George F. Indest III

_____
**GEORGE F. INDEST III, J.D., M.P.A., LL.M.**
District of Columbia Bar No.:   411414
(Application for U.S. District Court for DC pending)
Primary e-mail:   GIndest@TheHealthLawFirm.com
Secondary:   Court Filings@TheHealthLawFirm.com

**ATTORNEYS FOR PLAINTIFF
MARIA STOVER**

Attachments:   **Index to Exhibits & Exhibits**